IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GLADDEN L. MEJICA,

    Plaintiff,

       v.                                   Civil Action No. RDB-12-823

MONTGOMERY COUNTY,
MARYLAND, *et al.*

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiff Gladden Mejica has filed various federal and state claims which arise from his detention by Montgomery County police officers and an ensuing search of his person. Currently pending before the Court are (1) a Motion for Summary Judgment (ECF No. 32) filed by Defendants Montgomery County, Maryland, Officer Charles J. Welter, and Officer Curtis Jacobs; (2) Plaintiff's Cross-Motion for Summary Judgment (ECF No. 38); and (3) Plaintiff's Motion for Reconsideration of this Court's January 28, 2013 Order Dismissing Officer John Wigmore (ECF No. 39).[1]  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons that follow, Plaintiff's Motion for Reconsideration (ECF No. 39) is GRANTED and Officer John Wigmore will be reinstated as a Defendant in this case.  Plaintiff is deemed to have

---

[1] Defendant Wigmore and two other Defendants were dismissed from this action by Order dated January 28, 2013.  In their Reply brief on their Motion for Summary Judgment, Defendants have requested that the Motion for Summary Judgment be construed as applying to Defendant Wigmore as well if this Court grants Plaintiff's Motion for Reconsideration.  *See* Defs.' Reply 12-13.

1

abandoned his false arrest, false imprisonment, and intentional infliction of emotional distress claims, and those claims are DISMISSED as to all Defendants. The Defendants' Motion for Summary Judgment (ECF No. 32) is GRANTED with respect to Plaintiff's remaining claims against Defendants, and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 38) is DENIED.

## BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

On June 20, 2011, the Montgomery County 911 Emergency Communications Center received a 911 call reporting a robbery in a parking lot outside the H&M Store at the White Flint Mall, located at 11301 Rockville Pike, Rockville, Maryland. While the initial dispatches contained contradictory information about the suspects,[2] an updated dispatch down-graded the call to a felony theft and indicated the suspects were two Asian males, possibly Filipino; one suspect was described as an Asian male, around 5'8" tall and 160 lbs., with a black Mohawk, glasses, a white t-shirt, and blue jeans; the other suspect was described as 5'4", 140 lbs. Asian male with a buzz cut, glasses, a blue or black shirt, and blue jeans. Several uniformed county police officers responded to the call.

---

[2] The initial dispatch simply identified the suspects as two males running towards Rockville Pike. An updated dispatch, issued a few minutes later, stated that one of the suspects was a black male, between 18 and 20 years old, with a Mohawk style haircut and wearing a white t-shirt and jeans. The next update stated that the suspects were Asian, possibly Filipino, and were last seen running towards Nicholson Lane, while an additional update stated that one suspect was wearing a blue t-shirt while the other was wearing a white t-shirt. One was identified as wearing glasses, and both were reported to have spiked hair. The final update or "final lookout" is described in the text above.

In addition, the Second District Special Assignment Team (the "Team"), which included six officers in plain clothes and separate unmarked cars, also responded to the call. Current Defendants Charles Welter and Curtis Jacobs were members of the Team, as were the three former Defendants John Wigmore, Ryan Mungra, and Phillip Chapin.[3]

Defendant Welter arrived at the mall, parked his vehicle, and began walking around the road ringing the mall looking for the suspects. Defendant Welter identified two individuals—Plaintiff and Canong—whom he deemed to have resembled the description given in the dispatch,[4] and he radioed the other members of the Team. He followed these individuals towards Route 355. At one point, Defendant Welter observed Plaintiff and Canong leave the road and enter the woods on the side of the road. According to Defendant Welter, this diversion occurred as a marked police car approached. Defendant Welter's deposition testimony indicated that the individuals emerged onto Route 355 after the marked police car exited the mall and then began walking in a northerly direction. Defendant Welter radioed his observations to the rest of the team while he remained concealed in the woods for several more moments before also exiting the woods onto Route 355 and following the individuals at a distance.

Meanwhile, Defendant Jacobs had also responded to the call and had been searching for the suspects. Upon receiving Defendant Welter's radio updates, he drove past the suspects and determined that they also matched the suspects' descriptions from the dispatch.

---

[3] The final member of the Team is Vinny Sylvester.

[4] Defendant Welter did not observe any bags or extra clothing being carried by the individuals, but apparently he did not find that fact determinative because it is his experience that suspects sometimes hide stolen items to divert suspicion and then return for them later.

Accordingly, Defendant Jacobs continued driving north on Route 355 past the suspects and parked his car. Defendant Jacobs then met up with Defendant Mungra, and the two of them walked south on Route 355 towards Plaintiff and Canong, who were still approximately 20-25 feet away.[5] As Defendants Jacobs and Mungra walked towards Plaintiff and Canong, Defendant Wigmore approached them from the rear.

As the three officers converged on Plaintiff and Canong, the two boys suddenly began running in opposite directions.[6] Defendant Jacobs pursued Plaintiff. Plaintiff ran northeast away from Route 355 before encountering a hedge. At that point, Plaintiff slowed and turned, and Defendant Jacobs tackled Plaintiff into the bushes. A significant struggle ensued. At some point, Defendant Jacobs instructed Plaintiff to stop struggling and identified himself as a police officer.[7] At that point, Plaintiff ceased resisting, and Officer Jacobs handcuffed Plaintiff.

Defendant Jacobs then questioned Plaintiff. In addition, Plaintiff asserts that a separate Officer searched his pockets and looked through his wallet. The officers conducted

---

[5] Defendant Mungra testified during his deposition that he wears his police badge around his neck on a lanyard. He stated that, upon exiting his vehicle, he pulled out his badge and let it hang around his neck and over his shirt. Although Defendant Jacobs, who wears his badge in a similar fashion, did not recall whether he displayed his badge, Defendant Mungra testified that he observed Defendant Jacobs display his badge once the two officers met up.

[6] Plaintiff testified that the reason he ran was because someone behind him reached out and grabbed his shirt. Defendants Welter, Jacobs, and Mungra testified that someone yelled something to the effect of "Stop, Police!," but none of those three Officers could recall actually having made such a statement. Canong testified that he heard yelling but could not make out any of the words. The Plaintiff asserts that the first time that the Officers identified themselves as police was after he had been tackled by Officer Jacobs.

[7] Defendant Jacobs also appears to have informed Plaintiff that he was under arrest.

a show-up identification;[8] however, the show up identification was negative. At that point, the Officers removed the handcuffs and explained to Plaintiff and Canong that they were no longer suspects. As it turned out, Plaintiff and Canong had attended a movie at the mall, and Canong had produced ticket stubs to the Officers as proof.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*,

---

[8] A "show-up" identification involves bring a suspect before a witness or victim for purposes of identification

477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

The main thrust of Plaintiff's original Complaint was that the Defendants falsely arrested him and had used excessive force in his apprehension. After the conclusion of discovery, the Defendants moved for summary judgment, arguing that the Defendants acted lawfully because Defendants had reasonable suspicion to stop Plaintiff and that the amount of force used was not unreasonable. Alternatively, "assuming *arguendo* that Plaintiff was arrested," Defendants argued that Plaintiff's arrest was supported by probable cause. Finally, Defendants argued that they had no liability to Plaintiff under the doctrine of qualified immunity because there is no clearly established requirement that officers identify themselves as police officers before attempting to apprehend a suspect.

In his Opposition and Cross-Motion for Summary Judgment, Plaintiff conceded that he was "never under custodial arrest" and instead argued that his claims arise from the impermissible search of his pockets during an investigatory stop. While he continued to press his 28 U.S.C. § 1983 claim[9] as well as his common law assault and battery and

---

[9] Section 1983 of Title 28 of the United States Code states:

Maryland constitutional claims under this illegal search theory, there was no mention of his other common law tort claims for false arrest and false imprisonment.  In addition, Plaintiff filed a Motion for Reconsideration seeking to reinstate Officer Wigmore as a Defendant in this action, arguing that the evidence shows that Officer Wigmore was the specific officer involved in the search of Plaintiff.

In response, the Defendants argued that the Plaintiff has abandoned the false arrest theory and, therefore, that they could not be held liable for false arrest or false imprisonment.  Additionally, Defendants argued that Plaintiff should be estopped from arguing that he was not arrested due to the fact that his original complaint asserted that he was wrongfully arrested.

I.      **Motion for Reconsideration**

In his Motion for Reconsideration (ECF No. 39), Plaintiff requests that this Court reconsider its January 28, 2013 order dismissing Officer Wigmore from this case.  That ruling, issued by Judge Williams of this Court,[10] relied upon the sworn affidavit of Officer

---

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

28 U.S.C. § 1983.  Section 1983 does not create "substantive rights"; instead, the statute provides "a method for vindicating federal rights elsewhere conferred." *Thompson v. Dorsey*, Civ. A. No. ELH-10-1364, 2011 WL 2610704, at *3 (D. Md. June 30, 2011) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

[10] Judge Alexander Williams, Jr. took senior status on May 8, 2013, and retired on January 3, 2014.  Upon

7

Wigmore, in which he stated that he had not been involved in the pursuit, apprehension, or detainment of Plaintiff or the search of his property. In the Memorandum Opinion accompanying the dismissal order, Judge Williams noted that he would entertain a motion for reconsideration if the evidence produced during discovery indicated that Officer Wigmore was involved.

Plaintiff now points to the deposition testimony of Officer Jacobs as reason for his motion for reconsideration. Specifically, Plaintiff points out that Officer Jacobs testified that he believed it was Officer Wigmore who conducted the search after Plaintiff had been detained. In light of this revelations, this Court will grant Plaintiff's Motion for Reconsideration. However, this Court will also honor the Defendants' request that Officer Wigmore be added and incorporated into the Defendants' Motion for Summary Judgment. *See* Defs.' Opp'n Mot. Reconsideration ¶ 6.

## II.     Cross-Motions for Summary Judgment

### A. Abandoned Claims – False Arrest (Count I), False Imprisonment (Count II), and Intentional Infliction of Emotional Distress (Count IX)

A non-moving party abandons a claim where the party fails to respond to an argument raised in a dispositive motion. *See Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010). Because Plaintiff's Opposition brief does not address the issues of wrongful arrest, excessive force, or intentional infliction of emotional distress, Plaintiff is deemed to have abandoned those claims.

### B. Claims against Defendants Jacobs and Welter

---

Judge Williams' retirement, this case was reassigned to the undersigned.

In light of the Plaintiff's abandonment of the false arrest and excessive force theories, it is clear that Defendants Jacobs and Welter are entitled to summary judgment. Despite having had the opportunity to depose Defendants Jacobs and Welter and to conduct the full scope of discovery in this case, Plaintiff has not offered any evidence that anyone other than Defendant Wigmore was involved in the search. Accordingly, summary judgment will be granted as to the claims against Defendants Jacobs and Welter.

### C. Count VI - Section 1983 Claim

In light of the narrowing of the scope of this lawsuit to the post-detention search of Plaintiff, the precise dispute appears to have boiled down accordingly: the Plaintiff asserts that he was subjected to a lawful investigatory stop but was never arrested; the Defendants, however, now assert that Plaintiff was subjected to a lawful arrest, and that the search of Plaintiffs' pockets was therefore lawful as a search incident to arrest. Having narrowed the focus of this litigation, this Court must determine whether the Officers' search was permissible under the Fourth Amendment.[11]

Plaintiff has conceded that he was properly subject to an investigatory stop. *See Terry v. Ohio*, 392 U.S. 1 (1968). During such an investigatory stop, an officer may conduct a brief frisk or pat-down "reasonably designed" to discover weapons or instruments that could endanger the officers. *See id.* at 29; *see also United States v. Perate*, 719 F.2d 706, 709 (4th Cir. 1983) ("Brief stops in order to determine the identity of a suspicious individual or to

---

[11] Of course, although Defendants are not federal officials, the Fourteenth Amendment incorporated the Fourth Amendment as to state actors. *See Ker v. California*, 374 U.S. 23 (1963); *Dodson v. Merson*, Civ. A. No. AMD 03-3209, 2004 WL 1534209, at *1 (D. Md. July 8, 2004).

maintain the status quo while obtaining more information are permitted if reasonable in light of the facts known to the officers at the time."). During such a stop, "[a]n officer is not justified in conducting a general exploratory search for evidence under the guise of a stop and frisk." *U.S. v. Swann*, 149 F.3d 271, 274 (4th Cir. 1998). Once the officer has determined that a suspect is unarmed, the "officer exceeds the permissible scope of a *Terry* frisk if he continues to search the suspect." *Id.*

In this case, Plaintiff asserts that, despite the lawfulness of the stop itself, he was subjected to an unlawful search of his person. Specifically, he alleges that one of the Officers searched his pockets and removed his phone and wallet.[12] The testimony suggests that Officer Wigmore conducted the search. However, Plaintiff has offered not even a scintilla of evidence to suggest that the search fell outside of the confines of that allowed during an investigatory stop. Indeed, the other testimony indicates that the Officers were concerned that Plaintiff and Canong might be armed. In light of the fact that Plaintiff has offered nothing more than mere speculation regarding the impermissibility of the search, this Court will grant the Defendants' Motion for Summary Judgment with respect to Officer Wigmore and deny the Plaintiff's Cross-Motion for Summary Judgment. *See Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001); *see also* Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) ("Where no genuine issue of material fact exists, this Circuit has noted the

---

[12] The Officers did not recover any incriminating evidence during the search, and Plaintiff has not alleged any damages as a result of this search. In fact, in his brief Plaintiff acknowledged that he was only seeking nominal damages "regardless of whether he can establish that he suffered actual injury as a result of [a constitutional] violation." Pl.'s Resp. 9, ECF No. 38.

affirmative obligation of the trial judge to prevent factually unsupported claims and defenses' from proceeding to trial." (internal citations omitted)).

### D. Count VII - Maryland Constitutional Claims

Articles 24 and 26 of the Maryland Declaration of Rights are interpreted *in pari materii* with the Fourth and Fourteenth Amendments.[13] *See McDaniel v. Maryland*, Civ. A. No. RDB-10-189, 2010 WL 3260007, at *10 (D. Md. 2010). Accordingly, this Court's conclusion with respect to Plaintiffs' federal claim against Defendant Wigmore is equally applicable to Count VII under state law.

Plaintiff also seeks summary judgment against Defendant Montgomery County. Under Maryland law, local government entities may be liable for state constitutional violations under a *respondeat superior* theory. *Prince George's Cnty. v. Longtin*, 419 Md. 450, 495, 19 A.3d 859, 886 (2011) ("Maryland has already greatly expanded the liability of counties and municipalities beyond the scope of § 1983 by imposing *respondeat superior* liability on municipalities. In *DiPino*, we held that, unlike federal law, Maryland's constitution imposed an affirmative obligation to avoid constitutional violations by its employees through adequate training and supervision and by discharging or disciplining negligent or incompetent employees." (internal quotation marks and brackets omitted)). However, because this Court has not found that Plaintiff's constitutional rights were violated, there can

---

[13] Maryland law, however, does not provide the defense of qualified immunity for law enforcement agents. *McDaniel v. Maryland*, Civ. A. No. RDB-10-189, 2010 WL 3260007, at *10 (D. Md. 2010); *see also DiPino v. Davis*, 354 Md. 18, 51 (1991). In addition, violations of Maryland constitutional rights may be pursued in common law actions for damages, while § 1983 provides the mechanism for civil enforcement of federal constitutional violations. *See DiPino*, 354 Md. at 50.

11

be no *respondeat superior* liability for the County.  Accordingly, this Court will grant summary judgment in favor of Defendants on Plaintiff's Maryland constitutional claims.

### E.  Counts IV & V – Assault and Battery

Plaintiff asserts that the search of his person constituted assault and battery.  *See* Pl.'s Opp'n 10.  Defendants assert that there is no liability because the search was "justified and legally authorized because the unidentified officer searched Plaintiff's pockets incident to a custodial arrest." Defs.' Reply 12, ECF No. 43.  Because this Court has already concluded that Plaintiff was not subjected to an illegal search, Plaintiff's claims must be rejected.

### CONCLUSION

For the reasons stated above, Plaintiff's Motion for Reconsideration (ECF No. 39) is GRANTED and Officer John Wigmore will be reinstated as a Defendant in this case. Plaintiff is deemed to have abandoned his false arrest, false imprisonment, and intentional infliction of emotional distress claims, and those claims are DISMISSED as to all Defendants.  The Defendants' Motion for Summary Judgment (ECF No. 32) is GRANTED with respect to Plaintiff's remaining claims against Defendants, and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 38) is DENIED.

A separate Order follows.

Dated:       September 15, 2014

                                                                         /s/
                                                    Richard D. Bennett
                                                    United States District Judge